# Workman v. Commonwealth.

October 22, 1948.

Rehearing denied January 28, 1949.

E. P. Sawyer for appellant.

A. E. Funk, Attorney General, and Walter C. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 2, 1947, the grand jury of Jefferson County returned a joint indictment against Daniel T. McPeak, Jasper Nease, and appellant, Herbert Workman, in which they were accused of jointly committing the offense denounced by KRS 433.140, that of robbery of an-

other with the use of a deadly weapon, their victim being Vernon Hodge. They were arraigned before the court and each of them entered a plea of not guilty, following which, on their motion, they were tried separately. Nease was the first one tried, which resulted in his conviction and punishment by death. He appealed to this court resulting in an affirmance of the judgment in the case of Nease v. Commonwealth, 307 Ky. 640, 211 S. W. 2d 826. Later McPeak was tried and the same verdict was returned against him with like punishment. He appealed his case to this court which was affirmed on June 1, 1948 in 308 Ky. 29, 213 S. W. 2d 447.

The grounds urged by appellant on this appeal for a reversal of the judgment are substantially the same as those urged by his two codefendants, Nease and Mc-Peak, all of which we overruled. They are: (1) prejudicial testimony admitted over defendant's objection; (2) improper and prejudicial argument of prosecuting counsel to the jury; (3) "the verdict was not the true opinion of some of the jurors"; (4) the court erred in instructing the jury, and (5) the punishment inflicted violates the constitutional provision against cruel and inhuman punishment.

The records on the appeal from the conviction of Nease and McPeak depict a crime that is one of the most atrocious, beastly and savage that could be imagined, and one that the era of the Dark Ages seldom, if ever, produced.

The events leading up to the commission of the crime for which defendants were indicted occurring in Jefferson County, as well as the final murdering of Hodges by drowning him in the Kentucky River in Perry County, appear in the two opinions referred to above. The deadly weapon employed by defendants was a rifle carried by appellant when the trio first got into Hodge's car. Appellant was the sole witness who testified in his behalf. He was asked by his counsel "to begin at the very beginning and tell, if you can, why this happened and just what happened." His answer to that question covers more than seven pages without interruption by anyone. In it he told how he and his codefendants escaped from Fort Knox; how they thumbed Hodge to give them a ride with which he complied; how they robbed

him of his clothing, cash and other valuable articles, all of which was done in Jefferson County; what occurred after passing through the city of Louisville until they got to the point where they murdered Hodge in Perry County by drowning him in the Kentucky River and their final driving away from that point in Hodge's car. When they reached the end of their journey on the banks of the Kentucky River in Perry County appellant stated that they "parked the car by the side of the road and the gun was between me and Nease * * * I was sitting in the middle * * * he stopped and turned the lights off and picked up the rifle and we slipped out * * * me and McPeak slipped out of the car and McPeak reached back and untied his feet and we started down to the river and when he got down to the river Nease told me and McPeak to get a rock and I found a rock and picked it up and rolled it down by the railroad track and McPeak picked it up and he said 'That would be big enough' and he taken it down to where Hodge is and Nease was at, by the side of the railroad; so, after a while they hollered for me to come on, it was okay, and I went down there and they had the rock tied on him and I got on the left side of him and Nease was on the right and McPeak got behind and we pitched him over into the water." They then drove away in Hodge's car pursuant to what defendant stated was their purpose from the beginning, i. e., getting a car to carry them to their respective homes in Eastern Kentucky and Western Virginia.

The last question propounded to appellant by his counsel, and his answer was: "Can you give the jury any reason why you did it? A. Well, I hadn't been home for a long time and I wanted to go home and see my mother and dad then, so when we run off we got with Hodge in the car and I never taken the second thought. I don't know what I was thinking about when I done it."

We will now determine the grounds for reversal in the order named.

(1) The alleged improper testimony complained of in ground (1) consisted principally of photographs of Hodge and his car, both of which were also introduced at the trials of Nease and McPeak, but we declined in each case to sustain the same ground as prejudicial to

their substantial rights. Reference to those opinions is made for our reasons in so concluding.

(2) The argument of prosecuting counsel on this appeal is practically the same as that complained of in the other two trials. It consisted of a vigorous appeal in his argument to the jury for the infliction of the maximum punishment of death in which he stated that the enormity of the crime justified it, since there were no mitigating circumstances authorizing the infliction of a lower degree of punishment prescribed by the statute. The Commonwealth attorney in the performance of his duty is not only justified in urging a conviction of the defendant on trial, but to likewise insist on the degree of punishment which he concludes should be administered, and in doing so he violates no rights of the accused. In answering the same argument urged on the appeal of McPeak, we said (213 S. W. 2d 452):

"We often have condemned arguments of prosecuting attorneys which are calculated to arouse the passions and prejudices of juries; but where the evidence itself is so inflammatory as to render any argument in respect to it of little importance, the argument itself cannot be deemed to constitute error of a prejudicial nature. 23 C. J. S., Criminal Law, sec. 1105, p. 579; Carter v. Commonwealth, 278 Ky. 14, 128 S. W. 2d 214. We know of no case wherein the evidence is more inflammatory than in this; and whilst some may not be in sympathy with the infliction of the death penalty in any case, there can be no doubt that, if it is just at all, it should be inflicted in this instance."

(3 & 4) Neither grounds (3) nor (4) are mentioned, much less discussed, in brief of counsel for defendant, nor does the record disclose upon what facts either of them is supported. However, we have examined the instructions (which are practically the same as those given in the trials of Nease and McPeak) and find no error in them. Every issue that the evidence calls for was presented by an appropriate instruction thereby forcing us to conclude that neither ground (3) nor (4) is sufficient to authorize a reversal of the judgment.

(5) Ground (5) is so completely unfounded as to require no consideration, much less discussion. Whatever may be thought of the infliction of the death penalty

for certain crimes, when authorized by statute, the courts throughout the country have constantly upheld the right of the Legislature to so prescribe, and that in doing so the constitutional provision against the infliction of cruel and inhuman punishment is not violated. If there ever was a case wherein it was justifiable it appears to us that the crime committed by the defendants, including, of course, Workman, is one deserving such extreme penalty.

Finding no error authorizing a reversal of the judgment, it is accordingly affirmed.